UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

ANTHONY SCOTT CARTER                     CIVIL ACTION NO. 6:10-cv-01437

VERSUS                                                        JUDGE DOHERTY

HIDALGO-OUELLET HOLDINGS, LLC    MAGISTRATE JUDGE HANNA
d/b/a ENVIROCHEM

## RULING ON MOTION

(Rec. Doc. 2)

Pending before this Court is the plaintiff's motion for issuance of an order of sequestration. (Rec. Doc. 2). The motion is opposed. Oral argument was heard on October 27, 2010. Present at the hearing were David W. O'Quinn, counsel for the plaintiff, Anthony Scott Carter, and Allan L. Durand, counsel for the defendant, Hidalgo-Ouellet Holdings, LLC d/b/a Envirochem.

After review of the pleadings, consideration of the evidence, oral argument by the parties, and analysis of applicable law, the motion is DENIED for the following reasons.

## BACKGROUND FACTS

Envirochem, the defendant, is an oilfield service company that performs tank and pit cleaning operations on land and offshore. It also leases equipment to drilling contractors. On January 28, 2010, Envirochem entered into two agreements with the plaintiff, Scott Carter.

Pursuant to the "Employment Agreement,"[1] Carter became Envirochem's employee and its "representative for all rig and vessel cleaning operations."[2] He was to be employed for a three-year period, which could be extended for additional three-year periods.[3] He was to be paid $120,000 per year.[4] The Employment Agreement includes confidentiality, noncompetition, and nonsolicitation provisions.

Pursuant to the "Asset Purchase Agreement,"[5] Carter sold certain equipment, designated as "the Fixed Assets,"[6] to Envirochem. The Asset Purchase Agreement contains conveyancing language, stating:

> Seller [Carter] does hereby bargain, sell, assign, transfer and deliver unto Buyer [Envirochem] all of Seller's right, title and interest in and to the Fixed Assets, to have and to

---

[1] Rec. Doc. 15.

[2] Rec. Doc. 15 at 1.

[3] Rec. Doc. 15 at 1.

[4] Rec. Doc. 15 at 2.

[5] Rec. Doc. 2-3.

[6] Rec. Doc. 2-3 at 1.

>hold the same unto the said Buyer, its successors, legal representatives and assigns for its own use and benefit forever.[7]

The Asset Purchase Agreement also contains express warranty language, providing that:

> Seller [Carter] warrants and forever defends the right and title to the Fixed Assets unto the said Buyer [Envirochem] against the claims of all persons whomsoever.[8]

The price to be paid for the Fixed Assets was no less than $250,000 and no more than $700,000,[9] depending upon certain calculable variables. The sum of $250,000 was to be paid on or before February 1, 2010.[10] An additional payment of $250,000 is to be made before February 1, 2011 if Envirochem's total revenues for the first year exceed $1.5 million.[11] If Envirochem's total revenues for the first year exceed $2.5 million, however, the additional payment due before February 1, 2011 is to be $450,000. A final payment of $250,000 is to be made before February 1, 2012 if Envirochem's total revenues for the second year exceed $1.5 million –

---

[7] Rec. Doc. 2-3 at 1.

[8] Rec. Doc. 2-3 at 1.

[9] Rec. Doc. 2-3 at 2.

[10] Rec. Doc. 2-3 at 1. Evidence was presented at the hearing demonstrating that this payment was made.

[11] Rec. Doc. 2-3 at 2.

provided that the price for the Fixed Assets has not already been paid in full. As additional compensation for the Fixed Assets, Carter was to be paid 10% of the gross amount charged by Envirochem for every cleaning job while he was employed by Envirochem.[12] A portion of the value of the Fixed Assets was to be returned to Carter if the Asset Purchase Agreement was terminated after the first or second year.[13]

On July 27, 2010, Carter resigned his employment with Envirochem.[14] E-mail negotiations then took place concerning whether Envirochem was going to retain ownership of only $250,000 worth of the Fixed Assets and return the remainder to Carter.[15] The parties contemplated an inventory of the equipment[16] and a written agreement.[17] The inventory was not completed, and no written agreement was confected. On August 23, 2010, Envirochem advised Carter that "Envirochem remains the rightful owner of **all** the equipment listed in the purchase agreement."[18]

---

[12]  Rec. Doc. 2-3 at 2.

[13]  Rec. Doc. 2-3 at 2.

[14]  Rec. Doc. 17.

[15]  Rec. Doc. 18-4, 18-5, 18-6, 18-7, 18-8, 18-9.

[16]  Rec. Doc. 2-3 at 21.

[17]  Rec. Doc. 2-3 at 22.

[18]  Rec. Doc. 18-10 (emphasis in the original).

## CONTENTIONS OF THE PARTIES

In his complaint, Carter alleges that he has an ownership interest in certain equipment that was subject to the Asset Purchase Agreement. In his motion for issuance of an order of sequestration, Carter seeks to have all but $250,000 worth of the Fixed Assets seized and ultimately returned to him.

Carter further contends that e-mail correspondence exchanged after he resigned his employment with Envirochem amended or reformed the Asset Purchase Agreement so that only $250,000 worth of the Fixed Assets were purchased by Envirochem entitling Carter to sequestration of equipment totaling $500,000.

Although not briefed, Carter alternatively contends that the second $250,000 payment was due immediately upon Envirochem having earned $1.5 million in revenues during the first year of operations under the Asset Purchase Agreement, and Envirochem's failure to make the payment at that time vests Carter with a vendor's privilege on a portion of the Fixed Assets, entitling him to sequestration and return of the a portion of the Fixed Assets in the amount of $250,000.

Although a list of the assets was submitted by the parties, there is no delineation anywhere in the list which would give the court the ability to instruct the USMS exactly what it might sequester.

Envirochem claims that it is the owner of all of the Fixed Assets and, for that reason, Envirochem claims that Carter has no right to sequester or reclaim any of the Fixed Assets. Envirochem also contends that the e-mails exchanged after Carter's resignation did not amend or reform the Asset Purchase Agreement because the parties contemplated that a new written agreement would be confected, but no such agreement was ever prepared or executed. Envirochem further contends that the parties agreed that the second $250,000 payment was to be made only if Envirochem's gross revenues exceeded $1.5 million and then could be made at any time before February 1, 2011, there being no agreement that the payment was to be made immediately after the requisite earnings goal was reached.

## ANALYSIS

The undersigned finds that this is a diversity matter. When jurisdiction is based on diversity, the forum state's substantive law applies.[19] Consequently, Louisiana law applies. Additionally, in the specific context of sequestration and seizure, Federal Rule of Civil Procedure 64 reads as follows:

---

[19] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010), citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

  (a) Remedies Under State Law – In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

  (b) Specific Kinds of Remedies. The remedies available under this rule include the following – however designated and regardless of whether state procedure requires an independent action:
- arrest;
- attachment;
- garnishment;
- replevin;
- sequestration; and
- other corresponding or equivalent remedies.

The relevant Louisiana statute is Article 3501 of the Louisiana Code of Civil Procedure, which reads as follows:

> A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel[,] or agent.
>
> The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully.

The complaint in this matter was not verified, no security was furnished and the motion was not accompanied by an affidavit as required by this statute. However, the undersigned finds that any procedural problems arising from the plaintiff's failure

to file a verified complaint in this matter was cured by the submission at the hearing, without objection as to its submission for this purpose, of an affidavit by the plaintiff, Scott Carter, concerning the factual allegations set forth in the complaint.

Article 3571 of the Louisiana Code of Civil Procedure explains who can seek to have property sequestered. It reads as follows:

> When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of he action.

The Louisiana Supreme Court has stated that Articles 3501 and 3571 create an "extremely harsh remedy which is only extended where the formalities of the law have been strictly and literally complied with."[20] All five of Louisiana's appellate circuit courts have echoed that sentiment.[21]

Carter's first position is that he still owns part of the Fixed Assets, and his alternative position is that he has a lien interest in a portion fo the Fixed Assets.

---

[20] *Hancock Bank v. Alexander*, 237 So.2d 669, 672 (La. 1970).

[21] See, e.g., *Joiner v. Bill Hood Ford, Inc.*, 2002-0996 (La. App. 1 Cir. 04/02/03), 843 So.2d 1147, 1150, *writ denied*, 2003-1231 (La. 06/27/03), 847 So.2d 1267; *Burton v. Jardell*, 589 So.2d 610, 613 (La. App. 2 Cir. 1991); *Eaves v. Norwel, Inc.*, 570 So.2d 123, 128 (La. App. 3 Cir. 1990), *writ denied*, 572 So.2d 93 and 575 So.2d 375 (La. 1991); *Yorkwood Sav. and Loan Ass'n v. Thomas*, 379 So.2d 798, 799 (La. App. 4 Cir. 1980); *Barnett Marine, Inc. v. Van Den Adel*, 96-1029 (La. App. 5 Cir. 04/09/97), 694 So.2d 453, 458, *writ denied*, 97-1236 (La. 09/26/97), 701 So.2d 983.

Because Carter has only been paid $250,000 of the purchase price thus far, he claims that he remains the owner of that portion of the Fixed Assets having a value in excess of $250,000. There is no dispute that the first $250,000 payment was made. Jean Ouellet, one of Envirochem's owners, testified at the hearing that the first payment was made.

Under Louisiana Civil Code Article 2456, however, "ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." Consistently, "Louisiana has declined to recognize the common law concept of conditional sale of movables where the vendor attempts to retain ownership until the purchase price is paid in full."[22] An attempted conditional sale agreement is treated as a credit sale in which ownership passes at the time the contract is entered into.[23] As stated by the Louisiana Supreme Court:

> Conditional sales cannot be enforced as such in this state. It has been repeatedly held by this Court that a so called conditional sale or a sale by which a vendee is unconditionally bound for the purchase price and the vendor is to remain the owner of the property until the

---

[22] *Hewitt v. Safeway Ins. Co. of* La., 2001-0115 (La. App. 3 Cir. 06/06/01), 787 So.2d 1182, 1186, citing *Security Ctr. Protection Servs., Inc. v. All-Pro Sec., Inc.*, 97-1070 (La. App. 4 Cir. 11/26/97), 703 So.2d 806.

[23] *Succession of Dunham*, 408 So.2d 888, 896 (La. 1981).

>price is paid cannot be countenanced under the laws of this state.[24]

Carter admitted at the hearing that the transaction constituted a credit sale, and therefore, the fact that the entirety of the purchase price has not yet been paid does not mean that Carter still owns any of the Fixed Assets.

Furthermore, it is not necessary that the purchase price be a sum certain at the time the sale contract is entered into. To the contrary, Civil Code Article 2464 expressly provides that "[t]he price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid." Thus, so long as the parties agreed upon a method for calculating the sales price, the price need not be specified to the penny in the contract. In other words, "it is not essential that the specific sum of the sales price be stated at the time of contracting. The parties can agree that the price may be ascertained by computation...."[25] This is a situation in which the price was not specified but it can easily be calculated.

The undersigned finds that the Asset Purchase Agreement was a contract of sale and that, upon its execution, Carter no longer owned any part of the Fixed Assets.

---

[24] *Roy O. Martin Lumber Co. v. Sinclair*, 56 So.2d 240, 241 (La. 1951).

[25] *Benglis Sash & Door Co. v. A.P. Leonards*, 387 So.2d 1171, 1172 (La. 1980).

After Carter resigned his employment with Envirochem, a series of e-mails were exchanged between Carter and Jean Ouellet, one of the owners of Envirochem. Carter argues that these e-mails amended or reformed the Asset Purchase Agreement so that Carter sold only $250,000 of the Fixed Assets to Envirochem and is now entitled to a return of the remainder. On August 5, 2010, Jean Ouellet of Envirochem sent an e-mail to Carter, which reads as follows:

> We will ask Drew to organize the equipment in an effort to identify $250000 worth of equipment that we will keep. Thereafter, we will set a date and time... for you to pick up the balance of the equipment.  We will also sign a document reflecting the termination of our working relationship and the fact that we are all satisfy [sic] with the division of the equipment.  The document will also specify that we do not owe you any additional money for the equipment.  Does that work for you?[26]

On August 16, 2010, Ouellet sent an e-mail to Carter, which reads as follows:

> I understand that you have been working with Drew in an effort the [to] complete the equipment inventory. Once this process is completed, we will quickly proceed with the return of the equipment not covered by Envirochem's $250,000 purchase.[27]

The inventory was never completed and the written agreement referred to in Ouellet's e-mail correspondence was never finalized or executed.

---

[26] Rec. Doc. 2-3 at 22.

[27] Rec. Doc. 2-3 at 21.

Under Louisiana law, when the parties contemplate reducing their agreement to writing, "neither party is bound until the writing is perfected and signed."[28] The Louisiana Supreme Court addressed this subject earlier this year and noted that when the parties' "negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed."[29]

The undersigned finds that this was a situation in which Carter and Ouellet, on behalf of Envirochem, considered amending the Asset Purchase Agreement but clearly contemplated that the agreement would not be changed until another written contract was drafted and executed. Therefore, the undersigned further finds that the e-mails exchanged after Carter's resignation from Envirochem did not reform or amend the Asset Purchase Agreement.

For that reason, Carter retains no ownership or possessory interest in any part of the Fixed Assets, and therefore, pursuant to La. Code of Civil Procedure Article 3571, he is not entitled to sequestration or reclamation of any of the Fixed Assets, all of which he sold to Envirochem in the Asset Purchase Agreement.

---

[28] See, e.g., *WKM Investments, Inc. v. O'Neal*, 1991 WL 197160, 1 (E.D. La. 1991), citing *Breaux Brothers Constr. Co. v. Associated Contractors*, 77 So.2d 17, 226 La. 720 (1954).

[29] *Rainey v. Entergy Gulf States, Inc.*, 2009-572 (La. 03/16/10), 35 So.3d 215, 228, citing *Fredericks v. Faschnact*, 30 La. Ann 117 (1878).

The alternative argument Carter raised at the hearing, but has not set forth in his pleadings, is that he is entitled to a sequestration order under Louisiana Code of Civil Procedure Article 3571, not because he still owns a part of the Fixed Assets but because he has a vendor's lie as Envirochem has realized gross revenues in excess of $1.5 million in 2010.  Carter argues that the Asset Purchase Agreement should be interpreted as providing that the second $250,000 payment was due immediately upon Envirochem's having reached gross revenues of $1.5 million in its first year of operation after the Asset Purchase Agreement was executed.  If the contract is interpreted in that way, Envirochem is currently in default.

> Article 2.1 of the Asset Purchase Agreement reads as follows:
>
>> An additional payment in the sum of Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars will be paid to Seller [Carter] before February 1, 2011 if the total revenues (cleaning job tickets) for the first year exceed One Million Five Hundred Thousand and No/100 ($1,500,000.00) Dollars.[30]

The undersigned finds that Article 2.1 is clear and unambiguous and does not require that the second $250,000 payment be made immediately upon Envirochem's having reached its revenue goal for the first year.[31]  Had that been the intent of the

---

[30]   Rec. Doc. 2-3 at 2.

[31]   Although Mr. Ouellet testified as to the intent of the parties consistent with the findings herein, the undersigned does not need to resort to parole evidence given the clear and unambiguous language of the contract terms.

parties, the language should have read that the additional payment will be paid *when* the total revenues for the first year exceed $1,500,000. The contract does not require that payment be made *on* or before February 1, 2011 if the revenues are reached, rather, it clearly contemplates that if the revenues are reached, the second installment payment is due before February 1, 2011 and, therefore, is payable until January 31, 2010 at 11:59 p.m. and 59 seconds. Until that time is reached, Envirochem is not in breach of the Asset Purchase Agreement and Carter is not entitled to relief under Article 3571. Consequently, Carter's alternative argument lacks merit.

Accordingly,

IT IS ORDERED that the plaintiff's motion for issuance of a sequestration order (Rec. Doc. 2) is DENIED.

Lafayette, Louisiana, this 27th day of October, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)